### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUSAN GREEN, | : | Civil Action No: 2:18-cv-00034-JFC |
| | : | |
| Plaintiff, | : | |
| | : | The Honorable Joy Flowers Conti |
| v. | : | |
| | : | |
| GOLLA CENTER FOR PLASTIC | : | |
| SURGERY, P.C., and DINAKAR | : | *Electronically Filed* |
| GOLLA, M.D., | : | |
| | : | |
| Defendants. | : | **JURY TRIAL DEMANDED** |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

{L0740993.1 }

## Table of Contents

I.  INTRODUCTION ....................................................................................................... 1

II.  STATEMENT OF FACTS ......................................................................................... 2

III.  STANDARD OF REVIEW ........................................................................................ 6

IV.  ARGUMENT .............................................................................................................. 7

   A.  PLAINTIFF'S STATUTORY WAGE CLAIMS FAIL AS A MATTER OF LAW BECAUSE SHE WAS AN INDEPENDENT CONTRACTOR, NOT AN EMPLOYEE, OF DEFENDANTS ...................................................................................................... 7

     1.  FLSA and PMWA Statutory Language ................................................................. 7

     2.  Standard for Determining Employee Versus Independent Contractor Status ............. 9

     3.  Application of the Standard – Plaintiff Was an Independent Contractor, Not an Employee ............................................................................................................. 10

       a.  Control Over the Manner in Which Plaintiff's Work Was Performed ................ 10

       b.  Plaintiff's Opportunity for Profit or Loss ............................................................ 12

       c.  Plaintiff's Investment in Equipment or Materials................................................. 14

       d.  The Degree of Skill Required ............................................................................... 14

       e.  Permanence of the Working Relationship ........................................................... 15

       f.  Whether the Service Rendered Was an Integral Part of Defendants' Business.... 16

       g.  Other Factors Indicative of the Economic Reality of the Whole Activity............ 16

   B.  SUMMARY JUDGMENT SHOULD BE ENTERED ON THE BREACH OF CONTRACT CLAIM BECAUSE NO TERM OF THE PARTIES' WRITTEN AGREEMENT DICTATES THAT PLAINTIFF WAS ENTITLED TO ANY PARTICULAR LEVEL OF OVERALL COMPENSATION...................................... 17

   C.  DEFENDANTS ARE ENTITLED TO THE ENTRY OF JUDGMENT ON PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT .............................................. 19

V.  CONCLUSION............................................................................................................ 20

## Table of Authorities

**Cases**

*Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575 (3d Cir. 2009) ........................................... 18

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ............................................................ 8

*Andrichyn v. TD Bank, N.A.*, 93 F.Supp.3d 375 (E.D. Pa. 2015) .................................................. 19

*Bates v. Bell Tel. Co. of Pa.*, No. 93-217, 1993 WL 379542 (W.D. Pa. July 13, 1993) ............... 7, 11

*Benefit Tr. Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174 (3d Cir. 1985) .................................. 19

*Carlson v. Arnot–Ogden Mem'l Hops.*, 918 F.2d 411 (3d Cir. 1990) ........................................... 19

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................................ 6

*Channel Home Centers, Grace Retail v. Grossman*, 795 F.2d 291 (3d Cir. 1986) ........................ 18

*Com. ex rel. Pappert v. TAP Pharm. Prods., Inc.*, 885 A.2d 1127 (Pa. Commw. 2005) .................. 19

*Cosby v. Am. Media, Inc.*, 197 F.Supp.3d 735 (E.D. Pa. 2016) ...................................................... 19

*DaBronzo v. Roche Vitamins,* Inc., 232 F.Supp.2d 306 (D.N.J. 2002) ............................................. 8

*Dailey v. Progressive Corp.*, No. 03-3797, 2003 WL 22794689 (E.D. Pa. Nov. 12, 2003) .............. 10

*Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376 (3d Cir.1985) ........................................... 9, 10

*E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32 (3d Cir. 1983) .......................................................... 11, 13

*Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28 (1961) ........................................................ 9

*Greco v. United States*, 380 F.Supp.2d 598 (M.D. Pa. 2005) .......................................................... 8

*Guzzi v. Morano*, No. 10-1112, 2013 WL 4042511 (E.D. Pa. Aug. 8, 2013) ................................. 10

*Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408 (3d Cir. 2012) ......................... 9

*Hodgson v. E. Falls Sand & Gravel Co.*, No. 69-407, 1972 WL 952 (M.D. Pa. Aug. 30, 1972) ...... 11

*Hugh v. Butler County Family YMCA*, 418 F.3d 265 (3d Cir. 2005) ............................................... 6

*JO A. Yochum v. FJW Inv., Inc.*, No. 11-378, 2016 WL 4593755 (W.D. Pa. Sept. 2, 2016), aff'd, 715 F. App'x 174 (3d Cir. 2017) ..................................................................................................... 17

*Jochim v. Jean Madeline Educ. Ctr. of Cosmetology, Inc.*, 98 F.Supp.3d 750 (E.D. Pa. 2015) .......... 9

*Kahn v. Am. Heritage Life Ins. Co.*, 324 F.Supp.2d 652 (E.D. Pa. 2004) ....................................... 8

*Kassab v. Ragnar Benson, Inc.,* 254 F.Supp. 830 (W.D. Pa. 1966) ............................................... 18

*Leffler v. Creative Health Servs., Inc.*, No. 16-1443, 2017 WL 4347610 (E.D. Pa. Sept. 29, 2017) .. 8, 15

*Lewis v. UPMC Bedford*, No. 07-13, 2009 WL 840385 (W.D. Pa. Mar. 30, 2009) ........................... 8

*Martin v. Albrecht*, 802 F.Supp. 1311 (W.D. Pa. 1992) ................................................................. 8

*Martin v. Selker Bros.*, 949 F.2d 1286 (3d Cir. 1991) .......................................................... 9, 10, 16

*Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .................................... 6

*Miller v. Cerebain Biotech Corp.*, No. 16-3943, 2016 WL 6600009 (E.D. Pa. Nov. 8, 2016) ...... 8

*PLAC, Inc. v. Lamb*, No. 2122 EDA 2015, 2016 WL 5417790 (Pa. Super. Aug. 17, 2016) ......... 19

*Razak v. Uber Techs., Inc.*, No. 16-573, 2018 WL 1744467 (E.D. Pa. Apr. 11, 2018) .................... 11

*Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947) ..................................................... 8, 9, 16

*Safarian v. Am. DG Energy, Inc.*, 729 F. App'x 168 (3d Cir. 2018) ................................................ 7

*Schultz v. United States*, No. 15-454, 2017 WL 635289 (W.D. Pa. Feb. 16, 2017) ........................ 6

*Schupack v. Marketvision Research, Inc.*, No. 16-6233, 2017 WL 2828687 (E.D. Pa. June 29, 2017) ................................................................................................................................................. 8

*Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529 (7th Cir. 1987) .......................... 14

*Smith v. Crum Lynne Iron and Steel Co.*, 208 Pa. 462, 57 A. 953 (1904) ..................................... 18

*Sofranko v. Northwestern Mut. Life Ins. Co.*, No. 06-1657, 2008 WL 145509 (W.D. Pa. Jan. 14, 2008) ..................................................................................................................................... 10, 13

*Spyridakis v. Riesling Grp., Inc.*, 398 F. App'x 793 (3d Cir. 2010) ................................................ 8

{L0740993.1 }

*State Auto Prop. & Cas. Ins. Co. v. Bonk*, No. 11-1796, 2013 WL 3356045 (M.D. Pa. July 3, 2013) ............................................................................................................................. 11
*Tagare v. Nynex Network Sys. Co.*, 994 F.Supp. 149 (S.D.N.Y. 1997) ............................................ 14
*Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290 (1985) ............................................. 7
*Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947) .................................................................. 7

**Statutes**
Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, et seq. ................................. passim
Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260.1, *et seq.* ........... passim

**Rules**
Fed. R. Civ. P. 56(a) 43 P.S. §§ 260.1, ............................................................................................ 6

iii

NOW COME Defendants Golla Center for Plastic Surgery, P.C. (the "Golla Center") and Dinakar Golla, M.D. ("Dr. Golla") (collectively "Defendants"), by and through their undersigned counsel in the above-captioned matter, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56(B)(2), and hereby respectfully submit the following *Memorandum of Law in Support of Defendants' Motion for Summary Judgment* ("Memorandum of Law").

## I.    <u>INTRODUCTION</u>

Plaintiff, Susan Green, formerly the Director of Business Development for Defendants, commenced this action to recover wages which she claims Dr. Golla and the Golla Center wrongfully denied her by misclassifying her as an independent contractor rather than as an employee. However, in the face of her claims, the undisputed facts unwaveringly demonstrate that the arrangement Plaintiff agreed to and enjoyed was completely antithetical to a typical employer-employee relationship.  To wit, Plaintiff worked when she pleased, how she pleased, and as much as she pleased.  She determined for herself when, where, and how she interacted with the Golla Center's business contacts on a day-to-day basis in a totally unregulated and unsupervised environment. Plaintiff's performance was measured by the results of her work alone, and her earnings were at all times inextricably linked to her own individual efforts and successes.

Although Plaintiff explicitly agreed to, and in fact insisted upon, being treated as an independent contractor when it suited her purposes to do so, and although she enjoyed all of the freedoms associated with independent contractor status, when she became dissatisfied with her commission compensation, she resigned and filed the instant lawsuit, in which she now claims to have been an employee of the Golla Center.  Through this litigation, again because it suits her purposes to do so, Plaintiff attempts to engineer a complete turnaround, disavowing every facet of the

parties' actual relationship, including her own admissions, which point unerringly to independent contractor status.

## II.   <u>STATEMENT OF FACTS</u>

The Golla Center is a plastic surgery and comprehensive wound care practice with offices located throughout Allegheny County, Pennsylvania. *See* SOF ¶ 1.[1]  Dr. Golla, a Board Certified Plastic Surgeon, is the founder and owner of the Golla Center. Dr. Golla is himself a member of the Golla Center's medical staff, and he practices extensively at several hospitals and care facilities in western Pennsylvania and northern West Virginia. *See id.* ¶ 2.

Plaintiff was engaged by Dr. Golla to work in the role of Director of Business Development for the Golla Center. She operated in that capacity from March 2017 until September 2017. *See id.* ¶ 3. Plaintiff's primary area of responsibility as Director of Business Development was to develop the Golla Center's relationships with referring facilities and physicians, with the objective of growing the practice's revenues. *See id.* ¶ 4. Initially, Plaintiff was hired as a regular employee of the Golla Center. The initial contract of employment was memorialized in a "Term Sheet" which provided that Plaintiff's compensation would consist of a base salary of $24,000, plus a discretionary monthly bonus based on sales. *See id.* ¶¶ 5-7. No provision of the Term Sheet dictated that Plaintiff was entitled to any particular level of overall annual compensation. To the contrary, the document stated only that "[w]e *anticipate* an overall salary of 75,000 to 100,000 *if* goals are met." *See id.* ¶ 6.

In June of 2017, Plaintiff insisted on renegotiating her agreement with the Golla Center to become an independent contractor. *See id.* ¶¶ 8-9. In connection with her change in status, Plaintiff also insisted on dispensing with her base salary and being compensated instead based on a

---

[1] "SOF ¶ __" refers to the numbered paragraphs of Defendants' contemporaneously filed *Concise Statement of Undisputed Material Facts Supporting Defendants' Motion for Summary Judgment*, which is incorporated by reference as though fully set forth herein.

percentage of the Golla's Center's revenues. *See id.* ¶ 10. At that time, Plaintiff and Dr. Golla agreed that from and after June 2017, Plaintiff would no longer receive a base salary. Instead, her compensation would be entirely commission-based. *See id.* ¶ 11. From and after June 2017, Plaintiff's commission was based on a percentage of the Golla's Center's revenues, excluding revenues attributable to the practice's Graphix and spa business. *See id.* ¶¶ 12-14.

While working as Director of Business Development for the Golla Center, Plaintiff was free to determine her own working hours and was never required to adhere to any set work schedule. *See id.* ¶ 16. She was not required to record or otherwise account for her work time, nor was she ever asked to submit a time sheet recapitulating her hours worked. *See id.* ¶ 17. Thus, Plaintiff was free to determine how many hours, if any, she worked per day. She was also free to determine what time of day she worked, how many days she worked per week, and what particular days of the week she worked. *See id.* ¶ 18. Plaintiff also was free to take vacation time at her leisure. She was not required to submit vacation requests in advance, nor was she relegated to take vacation time during any particular time of the year. *See id.* ¶ 19.

Toward the beginning of her relationship with the Golla Center, Plaintiff created a written business plan based upon her own professional assessment of the needs of the practice. *See id.* ¶ 32. Plaintiff relied upon her own professional skill, judgment, and experience in the sales industry to determine the objectives of her business development role with the Golla Center. She also relied upon her own professional skill, judgment, and experience in deciding how to accomplish those objectives. *See id.* ¶ 33.

As discussed, Plaintiff's work as Director of Business Development generally involved calling upon and developing relationships with business contacts and prospective business contacts of the Golla Center in an effort to increase the practice's revenues. *See id.* ¶ 20. Plaintiff determined

{L0740993.1 }

which business contacts she called upon, and when and where she saw them.  She was free to structure her visits with these contacts as she deemed appropriate without supervision, and she decided, in her own discretion, what if any marketing material to utilize during such visits.  Plaintiff also was free to determine the content of her communications with current and prospective business contacts of the Golla Center.  Dr. Golla did not direct or control the manner in which Plaintiff performed her work on a day-to-day basis.  *See id.* ¶ 21.  Dr. Golla also did not review or evaluate Plaintiff's day-to-day job performance.  In fact, Dr. Golla did not have sufficient information to assess Plaintiff's daily work activities.  Instead, he only received and reviewed information relating to the *results* of Plaintiff's work, *i.e.*, the status of the Golla Center's revenues.  *See id.* ¶ 22.

For the first three months of her professional engagement with the Golla Center, Plaintiff's compensation consisted of a nominal base salary of $24,000, plus discretionary monthly bonuses based on sales.  *See id.* ¶ 23.  Thus, from the very inception of her relationship with the Golla Center, Plaintiff's earnings were overarchingly tied to her own individual efforts and successes.  *See id.* ¶ 24.  Plaintiff renegotiated her agreement with the Golla Center in June of 2017 when she asked to become an independent contractor and "be paid straight percentage."  *See id.* ¶¶ 9, 25.  At Plaintiff's request, her compensation from and after June 2017 was exclusively commission-based and entirely revenue-driven.  *See id.* ¶ 26.

Plaintiff was not provided with office space at the Golla Center.  She worked out of her home.  *See id.* ¶ 27.  Plaintiff was not provided with any equipment by the Golla Center.  She utilized her own personal cellular phone and computer, at her own expense, to perform her work as Director of Business Development.  *See id.* ¶ 28.  Plaintiff was not provided with a vehicle by the Golla Center.  *See id.* ¶ 29.  She paid for all of her own business expenses.  *See id.* ¶ 30.  Plaintiff also paid her own expenses for marketing events.  For instance, in August 2017, she hosted a "physician open

4

house" at her own expense.  *See id.* ¶ 31.  In 2017, Plaintiff paid her income tax under the independent contractor/self-employed theory and filed a Schedule C with her return.  *See id.* ¶ 39.  On her 2017 Schedule C, Plaintiff described her business as "consulting," and claimed multiple business expenses, presumably related to her work with the Golla Center, including office expenses ($1,200), supplies ($478), mileage ($7,947), and telephone ($3,000).  *See id.*

Plaintiff acted as the Golla Center's Director of Business Development for only about seven months, from March 2017 through September 2017.  *See id.* ¶ 34.  Plaintiff was not precluded from engaging in other business endeavors during the time when she operated as Director of Business Development for the Golla Center, and she did in fact take advantage of other professional opportunities during that time.  *See id.* ¶ 35.  Indeed, Plaintiff secured a position with one of the Golla Center's direct competitors, Wound Healing Solutions, as that entity's Marketing Manager, during the time when she was acting as the Golla Center's Director of Business Development.  *See id.* ¶ 36.

As indicated, the business of the Golla Center involves the delivery of medical and healthcare services, including cosmetic surgery and comprehensive wound care.  There is no evidence suggesting that Plaintiff possesses any of the specialized knowledge or abilities necessary to participate in the usual and regular business of the Golla Center.  *See id.* ¶ 37.  Dr. Golla is a highly trained, skilled, and specialized medical professional.  His work is highly regulated, and subject to a multitude of professional licensing requirements.  By contrast, Plaintiff's marketing and consulting work is totally unregulated, and not subject to any credentialing requirements.  *See id.* ¶ 38.

Ultimately, Plaintiff was unsuccessful in increasing the Golla Center's revenues.  Because her compensation was entirely commission-based and revenue-driven, Plaintiff's poor sales performance naturally resulted in her realizing lower commission payments than she had hoped to achieve.  As a result, in September 2017 she elected to voluntarily terminate her independent

{L0740993.1 }

contractor relationship with the Golla Center.  *See id.* ¶ 15.  Thereafter, she initiated the present lawsuit, claiming an entitlement to unpaid wages under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*  and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260.1, *et seq.* on the theory that she was an "employee" of the Golla Center.[2]  However, as discussed herein, the undisputed material facts overwhelmingly indicate that Plaintiff was an independent contractor, rather than an employee of Defendants.

## III.   <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  *See Schultz v. United States*, No. 15-454, 2017 WL 635289, at *1 (W.D. Pa. Feb. 16, 2017), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact.  *See Schultz*, 2017 WL 635289, at *1.  Once that burden has been met, the nonmoving party must identify "specific facts showing that there is a genuine issue for trial," or the factual record will be taken as presented by the moving party, and judgment will be entered as a matter of law.  *Id.*, quoting *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  In assessing the record, a court must view all facts in the light most favorable to the nonmoving party, and must draw all reasonable inferences and resolve all doubts in that party's favor.  *See id.*, quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005).

---

[2] Plaintiff also asserts claims under Pennsylvania common law for breach of contract and unjust enrichment, which are addressed herein at Sections IV(B) and IV(C), *infra*.

Based on this well-established standard, Defendants are entitled to judgment as a matter of law on Plaintiff's claims under the FLSA and WPCL because Plaintiff cannot establish that she was an "employee" within the meaning of those statutes, which is a necessary element of her claims. Defendants also are entitled to summary judgment on Plaintiff's breach of contract claim because no provision of the written "Term Sheet" forming the basis of that claim dictates that Plaintiff was entitled to any particular level of overall compensation. Finally, Defendants are entitled to the entry of judgment as to the claim for unjust enrichment because that claim is unsupported by applicable Pennsylvania law. Because the evidence must be viewed in the light most favorable to Plaintiff and all factual inferences drawn in her favor, Defendants rest their Motion exclusively upon Plaintiff's own deposition testimony and exhibits, which plainly confirms Defendants' position that summary judgment is appropriate in this case.

## IV.   **ARGUMENT**

### A.   **PLAINTIFF'S STATUTORY WAGE CLAIMS FAIL AS A MATTER OF LAW BECAUSE SHE WAS AN INDEPENDENT CONTRACTOR, NOT AN EMPLOYEE, OF DEFENDANTS**

#### 1.   **FLSA and PMWA Statutory Language**

The FLSA only applies to "employees" within the meaning of the statute. *See Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 (1985); *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947). The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e). To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). Despite the Act's rather circular definitions, it is adamantly well settled that independent contractors are ***not*** covered under the FLSA. *See Safarian v. Am. DG Energy, Inc.*, 729 F. App'x 168, 173 (3d Cir. 2018) (independent contractors are "not covered by the FLSA as a matter of law").[3] Similarly, "[t]he

---

[3] *See also Bates v. Bell Tel. Co. of Pa.*, No. 93-217, 1993 WL 379542, at *1 (W.D. Pa. July 13, 1993) (independent contractors are not subject to the protections of the FLSA); *Martin v.*

WPCL applies only to employees." *Spyridakis v. Riesling Grp., Inc.*, 398 F. App'x 793, 798 (3d Cir. 2010).  The WPCL provides no statutory definition of the term "employee."  *See* 43 P.S. § 260.2. However, as under the FLSA, it is well established that the WPCL does ***not*** apply to independent contractors.  *See Lewis v. UPMC Bedford*, No. 07-13, 2009 WL 840385, at *13 (W.D. Pa. Mar. 30, 2009) ("the protection of the WPCL applies only to employees, and not to independent contractors").[4]

Significantly, Plaintiff bears the burden of proving that she was an "employee" within the meaning of the FLSA and WPCL.  *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *see also Kahn v. Am. Heritage Life Ins. Co.*, 324 F.Supp.2d 652, 657 (E.D. Pa. 2004). Additionally, the question of whether Plaintiff was independent contractor or an employee is a question of law for the Court appropriate for resolution on summary judgment.  *See Leffler v. Creative Health Servs., Inc.*, No. 16-1443, 2017 WL 4347610, at *3 (E.D. Pa. Sept. 29, 2017); *see also DaBronzo v. Roche Vitamins,* Inc., 232 F.Supp.2d 306, 315 (D.N.J. 2002) ("Whether an individual is an employee or an independent contractor is a question of law to be determined by the court"); *Greco v. United States*, 380 F.Supp.2d 598, 622 (M.D. Pa. 2005) ("whether an individual is an employee or an independent contractor is a legal conclusion which involves an application of the law to the facts, and is properly resolved on summary judgment") (internal quotation omitted).

---

*Albrecht*, 802 F.Supp. 1311, 1313 (W.D. Pa. 1992) (independent contractors not entitled to the protections available under the FLSA); *Leffler v. Creative Health Servs., Inc.*, No. 16-1443, 2017 WL 4347610, at *3 (E.D. Pa. Sept. 29, 2017) ("Independent contractors are not covered under the FLSA"), citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728-29 (1947).

[4] *See also Schupack v. Marketvision Research, Inc.*, No. 16-6233, 2017 WL 2828687, at *2 (E.D. Pa. June 29, 2017) ("an independent contractor is not entitled to the protections of the WPCL"); *Miller v. Cerebain Biotech Corp.*, No. 16-3943, 2016 WL 6600009, at *3 (E.D. Pa. Nov. 8, 2016) (same).

2.    **Standard for Determining Employee Versus Independent Contractor Status**

Whether one is an employee or an independent contractor depends upon "the economic reality of the relationship." *Jochim v. Jean Madeline Educ. Ctr. of Cosmetology, Inc.*, 98 F.Supp.3d 750, 756 (E.D. Pa. 2015), citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) (eschewing technical concepts in favor of economic realities as the test for employment). "It is a well-established principle that the determination of the employment relationship does not depend on isolated factors but rather upon the 'circumstances of the whole activity.'" *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991), quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947); *see also Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 417-18 (3d Cir. 2012) (explaining the economic realities test as one depending upon the totality of the circumstances).[5]

When scrutinizing the "circumstances of the whole activity" and the "economic realities of the relationship," courts generally consider six non-exclusive, non-exhaustive factors, none of which is dispositive. *Id.* Those factors are: (1) the degree of the putative employer's right to control the manner in which the work is to be performed; (2) the putative employee's opportunity for profit or loss depending upon his or her managerial skill; (3) the putative employee's investment in equipment or materials required for the task; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the putative employer's business. *See id.*, *see also Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir.1985).

---

[5] Notably, notwithstanding many years of decisional jurisprudence endorsing the so-called economic realities test, nothing in the statutory text of the FLSA authorizes the courts to retroactively alter the terms of a consensual contractual relationship wherein the parties have explicitly bargained for and agreed to independent contractor status.

In deciding whether an individual is an employee or an independent contractor under the WPCL, Pennsylvania courts also examine the economic realities of the circumstances of the whole activity, and are guided by the same six-part inquiry endorsed by the Third Circuit in *Donovan* and *Martin*. *See Guzzi v. Morano*, No. 10-1112, 2013 WL 4042511, at *14 (E.D. Pa. Aug. 8, 2013); *Dailey v. Progressive Corp.*, No. 03-3797, 2003 WL 22794689, at *4 (E.D. Pa. Nov. 12, 2003) (explaining that the economic realities test is used "to distinguish employees from independent contractors" under the WPCL).

In the present matter, application of the six-part non-exhaustive guide utilized to reveal the economic realities of the relationship between Plaintiff and Defendants points unerringly to independent contractor status. Significantly, other relevant facets of the whole activity – not the least of which is Plaintiff's tacit insistence that she was better off as an independent contractor (*see* SOF ¶ 9, citing e-mail correspondence from Plaintiff to Dr. Golla in which Plaintiff states: "That is also why I agreed to be an independent contractor....") – also confirm that Plaintiff was not an employee, but instead an independent contractor beyond the purview of the FLSA and WPCL.

### 3.   Application of the Standard – Plaintiff Was an Independent Contractor, Not an Employee

#### a.   Control Over the Manner in Which Plaintiff's Work Was Performed

Under the first factor, the Court considers the extent to which Dr. Golla and the Golla Center had control over Plaintiff of the type traditionally exerted by an employer over its employees. *See Sofranko v. Northwestern Mut. Life Ins. Co.*, No. 06-1657, 2008 WL 145509, at *4 (W.D. Pa. Jan. 14, 2008). Courts, in evaluating this factor, have considered such details as:

- Whether the plaintiff was required to adhere to a rigid working schedule, or rather was free to determine her own work hours;

- Whether the plaintiff was required to record her hours worked;

- Whether the plaintiff was required to ask permission to take time off, or instead was free to take vacation time as she wished;

- Whether the plaintiff directed the manner in which her work was to be accomplished, being responsible for only the result; and

- Whether the plaintiff's performance was subject to review or evaluation.

*See, e.g., Bates v. Bell Tel. Co. of Pa.*, No. 93-217, 1993 WL 379542, at *3 (W.D. Pa. July 13, 1993) ("defendant Bell lacked significant or pervasive control over the manner in which plaintiff performed his services. In particular, defendant Bell did not establish a rigid working schedule for plaintiff, leaving him free to determine his work hours"); *Hodgson v. E. Falls Sand & Gravel Co.*, No. 69-407, 1972 WL 952, at *3-4 (M.D. Pa. Aug. 30, 1972) (concluding that truck drivers were not employees within the contemplation of the FLSA where no record was kept of their work time); *Razak v. Uber Techs., Inc.*, No. 16-573, 2018 WL 1744467, at *19 (E.D. Pa. Apr. 11, 2018) (fact that plaintiffs did not have to obtain approval to take vacations weighed in favor of independent contractor status); *State Auto Prop. & Cas. Ins. Co. v. Bonk*, No. 11-1796, 2013 WL 3356045, at *7 (M.D. Pa. July 3, 2013) (an independent contractor controls the manner of performing the work "being responsible only for the result"); *E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32, 38 (3d Cir. 1983) (fact that defendant kept track of appellants' sales, but did not evaluate their work performance weighed in favor of independent contractor status).

Applying these factors to the facts presented here, it is clear that Dr. Golla and the Golla Center did ***not*** exert significant control over the manner in which Plaintiff performed her work. The evidentiary record shows that:

- Plaintiff was free to work wherever and whenever she wanted (*see* SOF ¶ 14: "Q: Did you have a set workday start time/end time? A: No. Q: And did you have a set schedule where you were required to work Monday through Friday? A: There was no defined set schedule.");

11

- Plaintiff did not record or report her work time (*see id.* ¶ 15: "Q: Were you required to log your work time? By that I mean punch in or punch out. A: No. Q: Or keep any record of the hours you worked? A: No. Q: So you never submitted a time sheet or any – A: No. Q: – other document like that to the Golla Center? A: No.");

- Plaintiff was free to take vacations as she saw fit (*see id.* ¶ 16: "Q: Did Dr. Golla require you to submit vacation requests or let him know ahead of time what specific days or weeks you intended to take off as vacation? A: No. I mean, make them aware that I was going to be out. I made all my – all of the staff know. Q: But that wasn't something that you had to preschedule or get approved? A: No.");

- Plaintiff, not Dr. Golla, controlled the manner in which she completed her work (*see id.* ¶ 17: "("Q: Did Dr. Golla give you any direction as to how he expected you to achieve those goals or that specific goal? A: No.");

- Plaintiff determined which business contacts she called upon, and when and where she saw them. She was free to structure her visits with these contacts as she deemed appropriate without supervision, and she decided, in her own discretion, what if any marketing material to utilize during such visits. Plaintiff also was free to determine the content of her communications with current and prospective business contacts of the Golla Center. *See id.* ¶ 21.

- Dr. Golla did not review or evaluate Plaintiff's day-to-day job performance, and in fact, did not have sufficient information to assess Plaintiff's daily work activities. Instead, Dr. Golla only received and reviewed information relating to the results of Plaintiff's work, *i.e.*, the status of the Golla Center's revenues. *See id.* ¶ 22.

These undisputed facts demonstrate that Plaintiff possessed significant discretion over her work, and enjoyed far greater autonomy than a regular employee. The record thus supports a finding that Defendants did not control the manner in which Plaintiff performed her work; as such, the first factor weighs heavily in favor of independent contractor status.

### b. Plaintiff's Opportunity for Profit or Loss

Under the second factor, courts consider whether the plaintiff could control her own opportunity for profit or loss. The extent to which an individual is able to generate more money based on skill and hard work tends to establish independent contractor status. This Court's

{L0740993.1 }

evaluation of the second factor in *Sofranko v. Nw. Mut. Life Ins. Co.*, No. 06-1657, 2008 WL 145509

(W.D. Pa. Jan. 14, 2008) is particularly instructive.  There, the record indicated that:

> The plaintiff's sales activities and expenses were within his control, not NM's, as he determined his business expenses and paid for them, including costs for a telephone, fax, postage, office supplies, and hiring an assistant.  The plaintiff also paid for his own transportation, advertising and client entertainment expenses.  Thus, we agree with NM that the plaintiff's opportunity for profit or loss depended on his skill in generating commissions and controlling expenses, not on it.

*Sofranko*, 2008 WL 145509, at *6.  Significantly, the Third Circuit has explained that where workers

are paid a commission as a percentage of sales, "their potential for profit or loss [i]s primarily a

product of their own initiative and [i]s within their control."  *E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d

32, 37 (3d Cir. 1983).

Here, the undisputed record confirms that Plaintiff's compensation was at all times

inextricably linked to her skill in generating sales and increasing the revenues of the Golla Center.

From March through June of 2017, Plaintiff was compensated through a modest base salary plus

discretionary monthly bonuses based upon sales.  *See* SOF ¶ 7.  From and after June 2017, Plaintiff

no longer received a base salary; instead, her compensation was entirely commission-based.  *See*

SOF ¶¶ 11-12 ("Q:  So, from June '17 forward, your agreement with Dr. Golla was a 100 percent

commission-based payment structure?  A:  Correct.").  Moreover, like *Sofranko*, Plaintiff determined

her business expenses and paid for them, including costs for a cellular phone, computer, and vehicle.

*See* SOF ¶ 22.  Also like *Sofranko*, Plaintiff paid her own expenses for marketing events.  *See* SOF ¶

23.  Thus it is clear that Plaintiff's opportunity for profit or loss depended on her professional skill in

generating commissions and controlling expenses, not on it.  This factor therefore plainly weighs in

favor of a finding that Plaintiff was an independent contractor, not an employee, of the Golla Center.

{L0740993.1 }

### c.      Plaintiff's Investment in Equipment or Materials

The third factor requires the Court to consider the worker's investment in equipment or materials required for the task.  Here, this factor weighs in favor of finding independent contractor status because it is undisputed that Plaintiff was solely responsible for providing her own work equipment.  Indeed, Defendants made no investment whatsoever in the equipment Plaintiff used to perform her work as the Golla Center's Director of Business Development.  Plaintiff did not have office space at the Golla Center; instead, she worked out of her home.  *See* SOF ¶ 27.  She utilized her own personal cellular phone, computer, and vehicle, at her own expense, to conduct her work.  *See* SOF ¶¶ 28-30.  She also bore her own expenses for marketing events, including a physician open house she hosted in August 2017.  *See* SOF ¶ 31.

### d.      The Degree of Skill Required

Courts next consider whether the worker exhibits the type of skill and initiative typically indicative of independent contractor status.  While "skills are not the monopoly of independent contractors," *Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1537 (7th Cir. 1987), possessing special skills is relevant to the issue of whether workers are employees or independent contractors.  Courts addressing the level of skill necessary to indicate that a party is an independent contractor have found that it is not a worker's technical skills that matter, but rather the worker's business skills, judgment and initiative. *See, e.g., Tagare v. Nynex Network Sys. Co.*, 994 F.Supp. 149, 157 (S.D.N.Y. 1997) (finding the plaintiff, a Vice President of Marketing and Business Development, to be a highly skilled independent contractor).

Here, the record demonstrates that in operating as the Golla Center's Director of Business Development, Plaintiff relied upon her skill and experience in the sales industry to determine the objectives of her role.  For instance, at the inception of her relationship with the Golla Center, Plaintiff prepared a business plan based upon her own professional assessment of the needs of the

{L0740993.1 }

practice.  *See* SOF ¶ 32.  Plaintiff also utilized her professional skill, judgment, and expertise to determine how to accomplish her delineated objectives.  As Plaintiff testified:

> Q:  Now, how would you decide what you were going to do each day?  Would that be directed by Dr. Golla?  Or would you have to figure that out based on what you knew about what facilities were in your area and the research you did about their needs?
>
> A:  It depended.  It depended because ***I have been in sales for a long time.  So you have – you look at globally and figure out what you need to do***.  ***But he directed what he wanted done by the end of the week.***
>
> Q:  ***<u>And it would be your responsibility to figure out how to get that done?</u>***
>
> A:  ***<u>Correct</u>***.

SOF ¶ 33 (emphasis supplied).  Thus, the fourth "economic realities" factor weighs in favor of a finding that Plaintiff was an independent contractor.

### e.      Permanence of the Working Relationship

Courts considering the fifth factor look to whether the individual works "exclusively and continuously" for the putative employer.  *See Leffler v. Creative Health Servs.*, No. 16-1443, 2017 WL 4347610, at *5 (E.D. Pa. Sept. 29, 2017).  Here, Plaintiff acted as the Golla Center's Director of Business Development for only approximately seven months, from March 2017 through September 2017.  *See* SOF ¶ 34.  She was not precluded from engaging in other business ventures while working with the Golla Center, and she did in fact take advantage of other professional opportunities during that time.  *See* SOF ¶ 35.  Indeed, Plaintiff secured a position with one of the Golla Center's direct competitors, Wound Healing Solutions, as that entity's Marketing Manager, while she was acting as the Golla Center's Director of Business Development.  *See* SOF ¶ 36.   The fifth factor therefore weighs in favor of a finding that Plaintiff was an independent contractor.

**f.      Whether the Service Rendered Was an Integral Part of Defendants'
Business**

The Third Circuit has confirmed that:

> The critical consideration in assessing the integral relationship factor is the nature of
> the work performed by the workers: does that work constitute an "essential part" of
> the alleged employer's business? In other words, regardless of the amount of work
> done, workers are more likely to be "employees" under the FLSA if they perform the
> primary work of the alleged employer.

*Martin v. Selker Bros.*, 949 F.2d 1286, 1295 (3d Cir. 1991).

Here, the business of the Golla Center involves the delivery of medical and healthcare
services, including cosmetic surgery and comprehensive wound care.   There is no evidence
suggesting that Plaintiff possesses any of the specialized knowledge or abilities necessary to
participate in the usual and regular business of the Golla Center.  *See* SOF ¶ 37.  Dr. Golla is a highly
trained, skilled, and specialized medical professional.  His work is highly regulated, and subject to a
multitude of professional licensing requirements.  By contrast, Plaintiff's marketing and consulting
work is totally unregulated, and not subject to any credentialing requirements.  *See id.* ¶ 38.
Plaintiff's primary area of responsibility as Director of Business Development was to grow the
practice's revenues.  *See id.* ¶ 4.  This sales and commercial function is entirely unrelated to the
delivery of medical treatment, and, as such, the sixth factor weighs in favor of Plaintiff's independent
contractor status.

**g.      Other Factors Indicative of the Economic Reality of the Whole
Activity**

As discussed above, the determination of whether an individual is an employee or an
independent contractor does not depend on isolated factors but rather upon the "circumstances of the
whole activity."  *See, e.g., Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).  Here, one
significant indicia of the "whole activity" is Plaintiff's assertion that she was better off as an

independent contractor (*see* SOF ¶ 9, citing e-mail correspondence from Plaintiff to Dr. Golla in which Plaintiff states:  "That is also why I agreed to be an independent contractor....").  Another relevant consideration is Plaintiff's treatment of income during the period she performed services for Defendants.  *See JO A. Yochum v. FJW Inv., Inc.*, No. 11-378, 2016 WL 4593755, at *4 (W.D. Pa. Sept. 2, 2016), aff'd, 715 F. App'x 174 (3d Cir. 2017) (identifying tax treatment of income as germane to the independent contractor inquiry.  For the 2017 tax year, Plaintiff paid her income tax under the independent contractor/self-employed theory and filed a Schedule C with her return.  *See* SOF ¶ 39.   On her 2017 Schedule C, Plaintiff described her business as "consulting," and claimed multiple business expenses, including office expenses ($1,200), supplies ($478), mileage ($7,947), and telephone ($3,000).  *See id.*

Based on the foregoing, the undisputed facts overwhelmingly indicate that Plaintiff was an independent contractor, rather than an employee of Defendants.  As such, her FLSA and WPCL claims fail as a matter of law, and the Court should grant Defendants' Motion for Summary Judgment as to Counts I, II, and V of Plaintiff's Complaint.

**B.**   **SUMMARY JUDGMENT SHOULD BE ENTERED ON THE BREACH OF CONTRACT CLAIM BECAUSE NO TERM OF THE PARTIES' WRITTEN AGREEMENT DICTATES THAT PLAINTIFF WAS ENTITLED TO ANY PARTICULAR LEVEL OF OVERALL COMPENSATION**

Plaintiff's breach of contract claim is premised upon a written "Term Sheet" created at the inception of the parties' business relationship.  The Term Sheet confirmed the parties' agreement as to Plaintiff's initial compensation as follows: "Base salary of $24,000.  Paid bi-weekly." *See* SOF ¶ 6.  The Term Sheet also addressed the parties' preliminary expectations about monthly bonus payments that Plaintiff potentially could earn depending on her attainment of revenue goals.  In regards to Plaintiff's overall anticipated annual earning potential, the Term Sheet states that:  "[w]e ___anticipate___ an overall salary of 75,000 to 100,000 ___if___ goals are met."  *See id.*  Plaintiff maintains that

this provision constitutes an enforceable agreement between herself and Defendants for a *guaranteed* annual salary in the range of $75,000 to $100,000. *See id.* ¶ 43. However, the referenced provision of the Term Sheet is not sufficiently definite to comprise a binding agreement between the parties on the aggregate amount of Plaintiff's annual compensation.

It is well settled under Pennsylvania law that in order for a contract term to be enforceable, the term must be "sufficiently definite." *See Channel Home Centers, Grace Retail v. Grossman*, 795 F.2d 291, 298-99 (3d Cir. 1986). Whether a contract term is sufficiently definite to be enforced is a question of law. *See Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 585 (3d Cir. 2009). With respect to employment contracts specifically, to be binding, provisions relating to the amount of compensation due must be certain and specific. *See, e.g., Kassab v. Ragnar Benson, Inc.,* 254 F.Supp. 830, 832 (W.D. Pa. 1966) (explaining that "if the rate of pay is uncertain it will not be enforced," and holding that there was no agreed rate of bonus established where the plaintiff admitted that the amount was subject to a determination of profit by the company); *see also Smith v. Crum Lynne Iron and Steel Co.*, 208 Pa. 462, 57 A. 953 (1904) ("if the rate of pay is uncertain it will not be enforced").

Here, the provision of the Term Sheet at issue does not promise Plaintiff any particular amount of total annual compensation. While the parties' written agreement defines Plaintiff's initial base salary with particularity, the document is overtly conjectural with respect to the expectation as to Plaintiff's overall annual compensation, inclusive of potential bonuses, referring only to "anticipated" amounts "if" certain goals are met. As such, under fundamental principles of contract law, the Term Sheet does not provide a contractual basis for the payment of overall annual compensation within any definitive range.

{L0740993.1 }

Plaintiff also claims a contractual entitlement to expense reimbursement.  However, given her unequivocal admission that that she never had any agreement with Defendants requiring the reimbursement of expenses (*see* SOF ¶¶ 44-45), that aspect of her claim also fails.  Based on the above, Plaintiff's common law breach of contract claim fails as a matter of law, and the Court should grant Defendants' Motion for Summary Judgment as to Count III of Plaintiff's Complaint.

### C.   DEFENDANTS ARE ENTITLED TO THE ENTRY OF JUDGMENT ON PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT

Count IV of the Complaint seeks recovery under a theory of unjust enrichment.  *See* Compl. ¶¶ 41-48.  A claim of unjust enrichment is one of quasi-contract, and must be supported by the following elements: (1) plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit."  *See Cosby v. Am. Media, Inc.*, 197 F.Supp.3d 735, 744 (E.D. Pa. 2016); *see also Com. ex rel. Pappert v. TAP Pharm. Prods., Inc.*, 885 A.2d 1127, 1137 (Pa. Commw. 2005).

"In Pennsylvania, the doctrine of unjust enrichment is an equitable remedy to be implemented only when there is no contract.  *See Cosby*, 197 F.Supp.3d at 745 (unjust enrichment "inapplicable when the relationship between the parties is founded on a written agreement"), quoting *Benefit Tr. Life Ins. Co. v. Union Nat'l Bank*, 776 F.2d 1174, 1177 (3d Cir. 1985).[6]  Courts have held that breach of contract and unjust enrichment claims may be pleaded in the alternative, but that if the court finds that a contract exists, the unjust enrichment claim must fail.  *See, e.g., Carlson v. Arnot–Ogden Mem'l Hops.*, 918 F.2d 411, 416 (3d Cir. 1990).

---

[6] *See also PLAC, Inc. v. Lamb*, No. 2122 EDA 2015, 2016 WL 5417790, at *5 (Pa. Super. Aug. 17, 2016) ("Because a written contract governed the relationship between [the parties], Plaintiffs have no entitlement to quasi-contractual remedies"); *Andrichyn v. TD Bank, N.A.*, 93 F.Supp.3d 375, 389 (E.D. Pa. 2015) ("[W]here the subject matter of the claim is governed by a contract, a plaintiff cannot pursue (and a court cannot grant) relief based on an unjust enrichment theory").

In this case, a contract exists between Plaintiff and the Defendants.  As discussed, the parties' initial contract of employment was memorialized in a "Term Sheet" describing the details of the parties' initial agreement.  Accordingly, Plaintiff's claim for bonus payments under a theory of unjust enrichment is precluded by her breach of contract action and summary judgment should granted in favor of Defendants as to Count IV.

## V.   <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants Dinakar Golla, M.D. and the Golla Center respectfully request that this Court grant their Motion for Summary Judgment and enter judgment in favor of Defendants on Plaintiff's each of Plaintiff's claims.

Respectfully submitted,

Date:  August 23, 2018                    By:   */s/ Sunshine R. Fellows, Esquire*
                                          Avrum Levicoff, Esquire
                                          ALevicoff@LevicoffLaw.com
                                          Pa. I.D. #: 26044
                                          Sunshine R. Fellows, Esquire
                                          SFellows@LevicoffLaw.com
                                          Pa. I.D. #: 87632
                                          Chloe C. Zidian, Esquire
                                          CZidian@LevicoffLaw.com
                                          Pa. I.D. #: 322849
                                          The Levicoff Law Firm, P.C.
                                          4 PPG Place, Suite 200
                                          Pittsburgh, PA 15222
                                          *Counsel for Defendants*

{L0740993.1 }

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SUSAN GREEN,                                    Civil Action No: 2:18-cv-00034-JFC

      Plaintiff,                              The Hon. Joy Flowers Conti

  v.

GOLLA    CENTER    FOR    PLASTIC
SURGERY, P.C., and DINAKAR GOLLA,
M.D.,

      Defendants.                             **JURY TRIAL DEMANDED**

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 23, 2018 a true and correct copy of the **Memorandum of Law in Support of Defendants' Motion for Summary Judgment** was filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Michael E. Fiffik, Esquire
mfiffik@wgsf-law.com
Welch, Gold, Siegel & Fiffik, P.C.
428 Forbes Avenue, Suite 1240
Pittsburgh, PA 15219
*Counsel for Susan M. Green*

                      By:  */s/ Sunshine R. Fellows, Esquire*
                          Avrum Levicoff, Esquire
                          ALevicoff@LevicoffLaw.com
                          Pa. I.D. #: 26044
                          Sunshine R. Fellows, Esquire
                          SFellows@LevicoffLaw.com
                          Pa. I.D. #: 87632
                          Chloe C. Zidian, Esquire
                          CZidian@LevicoffLaw.com
                          Pa. I.D. #: 322849
                          The Levicoff Law Firm, P.C.
                          4 PPG Place, Suite 200
                          Pittsburgh, PA 15222
                          *Counsel for Defendants*