IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN GREEN, | )<br>) |
| Plaintiff, | )<br>) 2:18-cv-00034<br>) |
| v. | )<br>) Judge Marilyn J. Horan |
| GOLLA CENTER FOR PLASTIC<br>SURGERY, P.C., and DINAKAR GOLLA,<br>M.D., | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

# OPINION

Plaintiff Susan Green filed an action against Defendants Golla Center for Plastic Surgery, P.C., and Dinakar Golla, M.D., in the Magisterial District Court in Allegheny County on October 23, 2017, seeking recovery of unpaid wages. (ECF No. 1-2, at 1). On November 28, 2017, judgment was awarded to Plaintiff Green in the amount of $8,132,50. *Id.* at 2–5. In December 2017, Defendants filed a Notice of Appeal to have the case heard de novo by the Court of Common Pleas. *Id.* at 8. In accordance with Pennsylvania's Rules of Civil Procedure, Plaintiff Green filed a complaint on January 3, 2018. *Id.* at 9. In her Complaint, Plaintiff Green alleged claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, Pennsylvania's Wage Payment and Collection Law (WPCL), 43 P.S. § 260.1 *et seq.*, and Pennsylvania common law, seeking "to recover damages for non-payment of wages, commissions, interest, penalties, reasonable counsel fees, and to make Plaintiff whole." *Id.* On January 8, 2018, Defendants removed the case to federal court on the basis of federal question jurisdiction and supplemental jurisdiction. (ECF No. 1, at 2).

1

Following discovery, on August 23, 2018, Defendants filed a Motion for Summary Judgment, (ECF No. 19), and Plaintiff Green filed a Partial Motion for Summary Judgment, (ECF No. 22). The parties provided briefs, (ECF Nos. 21, 23, 26, 28, 30), a combined Concise Statement of Facts, (ECF No. 32; *see also* ECF Nos. 20, 24), and related appendices. This Court heard oral argument on the Motions on February 20, 2019.

For the following reasons, Defendants' Motion for Summary Judgment will be granted in part and denied in part, and Plaintiff Green's Partial Motion for Summary Judgment will be denied.

**I. Factual Background**

The Golla Center for Plastic Surgery (hereinafter, "Defendant GC"), a plastic surgery and comprehensive wound care practice, is a corporation owned by a single shareholder, Dr. Dinakar Golla (hereinafter, "Defendant Golla"). (ECF No. 32, at p. 1, ¶ 1; p. 26, ¶ 1). Defendant GC does not have a board of directors, and Defendant Golla, a board-certified plastic surgeon, makes all key decisions for the operation of Defendant GC. *Id.* at p. 1, ¶ 2; p. 26, ¶ 2–3. Defendant Golla hired Plaintiff Susan Green as the Director of Business Development for Defendant GC. *Id.* at p. 2, ¶ 3. Plaintiff Green began working for Defendant GC on February 27, 2017. *Id.* at p. 30, ¶ 4. Plaintiff Green's responsibilities entailed "develop[ing] the Golla Center's relationships with referring facilities and physicians, with the objective of growing the practice's revenues." *Id.* at p. 2, ¶ 4; *see also id.* at p. 11, ¶ 20.

Plaintiff Green and Defendant Golla memorialized their initial agreement in a term sheet, which stated that Plaintiff Green would receive a base annual salary of $24,000, paid bi-weekly, plus a discretionary monthly bonus. *Id.* at pp. 2–3, ¶¶ 5–6. The term sheet noted that the parties anticipated Plaintiff Green's overall annual salary would be in the range of $75,000 to $100,000

2

"if goals are met." *Id.* at p. 3, ¶ 6. The term sheet also stated the parties' expectations for their working relationship: "1. Communication of the areas worked daily in an excel like format[,] 2. Weekly meetings to help direct progress[,] 3. Access to billing and reports to help direct the progress and areas of improvement." *Id.*

In addition to the agreement expressed in the term sheet, Defendant Golla expected Plaintiff Green to work full time, *id.* at p. 38, ¶ 12; ECF No. 29-2, at 9, although Plaintiff Green did not have a set Monday-through-Friday schedule or set start and end times for her workdays, nor did she have to track her hours or submit a timesheet. (ECF No. 32, at pp. 7–9, ¶¶ 16–17). Plaintiff Green was also free to take vacation time when she chose, and did not have to get time off pre-approved by Defendant Golla. *Id.* at p. 10, ¶ 19. Defendants offered Plaintiff Green "the opportunity to participate in the same fringe benefits as the other employees although she elected not to do so." *Id.* at p. 40, ¶ 13. Defendants supplied Plaintiff Green with an email address, and gave her "access to GC's computer systems, financial information and identities of GC's customers," *id.* at p. 42, ¶ 16, but did not provide Plaintiff Green with an office, cell phone, computer, or vehicle, *id.* at p. 15, ¶¶ 27–29. Instead, Plaintiff Green worked from home and used her own phone, computer, and car, and she otherwise paid for all of her business expenses and marketing events. *Id.* at pp. 15–16, ¶¶ 27–31. Furthermore, Defendant Golla did not require that Plaintiff Green agree to work exclusively for Defendant GC. *Id.* at pp. 19–20, ¶ 35. He did, however, note that he would find it acceptable for Plaintiff Green to engage in other employment only if it did not interfere with her work for Defendant GC. *Id.*; ECF No. 29-2, at 9.

At the outset of Plaintiff Green's employment with Defendant GC, Plaintiff Green developed "a written business plan based upon her own professional assessment of the needs of the practice." (ECF No. 32, at p. 16, ¶ 32). Plaintiff Green stated in her deposition that Defendant Golla "wasn't certain what he needed" and "his goals were very vague." *Id.* at p. 17,

3

¶ 33. She also testified that although Defendant Golla "directed what he wanted done by the end of the week," it was Plaintiff Green's "responsibility to figure out how to get that done." *Id.* at p. 19, ¶ 33. For the first few months of Plaintiff Green's employment, Defendant Golla "directed Green to focus her sales efforts in a specific geographic area." *Id.* at p. 38, ¶ 11. Otherwise, Plaintiff Green determined how to perform her role as Director of Business Development by speaking with Defendant GC's nurse practitioners, researching other physicians and facilities, and relying on her sales experience. *Id.* at pp. 16–19, ¶ 33. Plaintiff Green provided updates to Defendant Golla by submitting information to him on people or businesses she visited and the outcomes of those meetings. *Id.* at p. 9, ¶ 17; p. 40, ¶ 15.

In March, April, and May 2017, Defendant GC paid Plaintiff Green the agreed-upon bi-weekly salary, as well as discretionary monthly bonus payments, the amounts of which were determined by Defendant Golla. *Id.* at p. 13, ¶ 23; p. 34, ¶¶ 8–9. However, in June 2017, the parties renegotiated Plaintiff Green's compensation, retroactive to May 2017, agreeing that instead of a base salary plus monthly bonus, Plaintiff Green would be paid a commission of two percent of Defendant GC's gross monthly revenues, minus revenues derived from two specific services offered by Defendant GC. *Id.* at pp. 5–6, ¶¶ 8, 10–12; p. 42, ¶¶ 17–18; p.43, ¶ 20. On June 29, 2017, Plaintiff Green confirmed by email the parties' agreement to modify her compensation. *Id.* at p. 6, ¶ 13. Defendant Golla responded that he agreed, but acknowledged that he thought two percent was high and that the parties could "start with that and adjust lower to get to a reasonable number along with growth." *Id.* at p. 7, ¶ 14. Defendant Golla testified, regarding the June 2017 agreement, that although he believed Plaintiff Green's job performance played a role in whether revenues increased or decreased, (ECF 29-2, at 20), he acknowledged that many variables had an impact and that it was hard to quantify them, *id.* at 19–22. Defendant Golla also testified that under the June 2017 agreement, Plaintiff Green's fixed two-percent

commission would include commission based on revenues from "areas she hadn't worked a day," but that he agreed to the change in compensation anyways. *Id.* at 24. Defendant GC paid Plaintiff Green a two-percent commission based on the June 2017 agreement for May, June, and July 2017. (ECF No. 32, at p. 43, ¶ 21).

From the time Plaintiff Green was hired until the time the parties renegotiated Plaintiff Green's compensation in June 2017, both Plaintiff Green and Defendants considered Plaintiff Green to be an employee of Defendant GC. *Id.* at p. 35, ¶ 10. Following renegotiation, Plaintiff Green acknowledged in a June 26, 2017 email to Defendant Golla that the parties agreed that she would be considered an independent contractor under their new agreement on compensation "so you didn't have to actually pay for the time off or pay my payroll taxes." *Id.* at p. 5, ¶ 9. Additionally, on her 2017 tax return, Plaintiff Green "paid her income tax under the independent contractor/self-employed theory," describing her business as "consulting," and claimed several business expenses, such as office expenses, supplies, mileage, and phone. *Id.* at p. 22, ¶ 39. However, Plaintiff Green alleges that the nature of her role otherwise did not change in June 2017, as she "continued to perform the same job duties that she had been performing since the inception of her employment." *Id.* at pp. 43–44, ¶¶ 23–24. Defendants do not dispute that Plaintiff Green's role did not change; rather, Defendants focus on whether Plaintiff Green continued to perform her job satisfactorily. *Id.* at p. 44, ¶ 24; *see also* ECF No. 25-2, at 20–21.

Defendant Golla alleges that on or around July 20, 2017, he communicated to Plaintiff Green that a commission based on two percent of the practice's gross revenue was unsustainable. (ECF No. 32, at pp. 44–45, ¶ 25; *see also* ECF No. 25-3, at ¶14). Defendant Golla allegedly informed Plaintiff Green "that going forward, her commission payments would be calculated based upon a percentage of growth in the practice's revenues, as opposed to being calculated based upon a percentage of the practice's overall revenues." (ECF No. 32, at pp. 44–45, ¶ 25).

5

Plaintiff Green denies that Defendant Golla communicated this information to her, *id.*, and in August and September 2017, Plaintiff Green requested to be paid according to the June 2017 agreement, *id.* at p. 45, ¶ 26. Defendant GC did not pay Plaintiff Green anything in August and September 2017, alleging that Plaintiff Green was not entitled to any commission because there had been no growth in revenue. *Id.* at p. 46, ¶ 27. On September 22, 2017, Plaintiff Green resigned from her relationship with Defendant GC, *id.* at p. 7, ¶ 15, having secured employment with one of Defendant GC's competitors. *Id.* at p. 21, ¶ 36. Plaintiff Green began her new position the following month. *Id.*

Plaintiff Green instituted the present action in an effort to recover unpaid compensation that she claims is due her for the months of August and September 2017. (ECF No. 1-2). In Counts I and II of the Complaint, Plaintiff Green alleges that Defendant GC and Defendant Golla, respectively, violated Pennsylvania's Wage Payment and Collection Law (WPCL). *Id.* at 15–16. In Counts III and IV, Plaintiff Green alleges that Defendant GC is liable for breach of contract and unjust enrichment, respectively. *Id.* at 16–18. Lastly, in Count V, Plaintiff Green brings a claim against Defendant GC under the Fair Labor Standards Act (FLSA). *Id.* at 18–20. Defendants have moved for summary judgment on all five Counts. (ECF No. 19). Plaintiff Green has likewise moved for partial summary judgment, seeking judgment as to Counts I, II, III, and V. (ECF No. 22).

## II. Motions for Summary Judgment

A. Legal Standard

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to

be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted). Additionally, for a factual dispute to be material, it must have an effect on the outcome of the suit. *Id.*

In reviewing and evaluating the evidence for a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted). However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law. *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

B. Discussion

*1. FLSA claim*

A predicate to liability under FLSA is the existence of an employer-employee relationship between the plaintiff and defendant. *Davis v. Abington Mem'l Hosp.*, 817 F. Supp. 2d 556, 563 (E.D. Pa. 2011). FLSA thus applies only to employees, not to independent contractors. *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1379 (3d Cir.1985); *Leffler v. Creative Health Servs.*, 2017 U.S. Dist. LEXIS 161719, at *7 (E.D. Pa. Sept. 29, 2017). The question of whether a plaintiff is an employee or an independent contract is ultimately a question of law for the court, and therefore can be resolved on motion for summary judgment. *Dabronzo v. Roche Vitamins*, 232 F. Supp. 2d 306, 315–16 (D.N.J. 2002); *Leffler*, 2017 U.S. Dist. LEXIS 161719, at *8.

However, where there is a disputed issue of material fact, summary judgment is not appropriate. *Donovan*, 757 F.2d at 1381.

Plaintiff Green alleges in Count V of her Complaint that Defendant GC violated FLSA by misclassifying her as an independent contractor "for the purpose of avoiding the significant responsibilities associated with the employer/employee relationship." (ECF No. 1-2, at 19). Defendant GC argues that it is entitled to judgment as a matter of law on Count V because Plaintiff Green was in fact an independent contractor and therefore not covered by FLSA. (ECF No. 19, at ¶ 2). Plaintiff Green, however, argues that she is entitled to judgment as a matter of law on Count V because she was an employee of Defendant GC and because Defendants have admitted to not paying her for the months of August and September 2017. (ECF No. 22, at ¶ 12). Judgment on Count V thus turns on whether Plaintiff Green was an employee or an independent contractor of Defendant GC.

FLSA defines "employee" broadly. *Silla v. One Three Five, Inc.*, 2018 U.S. Dist. LEXIS 106066, at *13 (W.D. Pa. June 26, 2018) (citing *Donovan*, 757 F.2d at 1382–83). The Third Circuit adopted a six-factor "economic realities" test to distinguish between employees and independent contractors. *Id.* First, courts are to look to "the degree of the alleged employer's right to control the manner in which the work is to be performed." *Safarian v. Am. DG Energy, Inc.*, 729 Fed. App'x. 168, 173 (3d Cir. 2018). Second, courts should consider "the alleged employee's opportunity for profit or loss depending upon his managerial skill," as well as, third, "the alleged employee's investment in equipment or materials required for his task, or his employment of helpers." *Id.* Next, courts should assess "whether the service rendered requires a special skill." *Id.* Fifth, courts are to examine "the degree of permanence of the working relationship," and lastly, "whether the service rendered is an integral part of the alleged employer's business." *Id.* The Supreme Court has emphasized that, in determining whether a

8

plaintiff is an employee or an independent contractor, "the circumstances of the whole activity should be examined rather than any one particular factor." *Donovan*, 757 F.2d at 1382 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947)). Additionally, the Third Circuit has said the "analysis is controlled by the economic reality of the relationship under the [*Donovan*] factors," not by how the parties may have chosen to structure their relationship. *Safarian*, 729 Fed. App'x. at 173.

    *a. Alleged employer's degree of control.* Turning now to the first factor, courts in the Third Circuit have used several sub-factors to make a determination regarding "the degree of the alleged employer's right to control the manner in which the work is to be performed." *Sofranko v. Northwestern Mut. Life Ins. Co.*, 2007 U.S. Dist. LEXIS 99666, at *11 (W.D. Pa. Nov. 29, 2007), *adopted by* 2008 U.S. Dist. LEXIS 2493 (W.D. Pa. Jan 14, 2008). Such sub-factors include

> whether [the defendant] established a rigid working schedule for the plaintiff, or left him free to determine his own work hours; whether it oversaw or supervised his work; whether the plaintiff had an exclusive relationship with [the defendant], or was free to engage in other business relationships with third parties; whether the plaintiff was required to provide [the defendant] with sales reports and records or had complete discretion with respect to record keeping; and whether the plaintiff had discretion to hire his own help and pay them.

*Id.* More simply, "[f]acts relevant to this inquiry are the degree of supervision over the worker, control over the worker's schedule, and instruction as to how the worker is to perform his or her duties." *Luxama v. Ironbound Express, Inc.*, 2012 U.S. Dist. LEXIS 99292, at *10 (D.N.J. June 28, 2012).

    For example, in *Sofranko*, the court found that the defendant, NM, "did not establish a work schedule for the plaintiff, and it did not oversee, nor supervise his work," but instead, "the plaintiff was free to set his own schedule and had complete discretion with respect to record keeping." *Id.* at *16–17. Additionally, "[t]he plaintiff generated his own client lists, decided

9

what products to sell them, was free to sell non-NM products to customers, incurred and paid business expenses solely as he saw fit, including hiring and paying an assistant, and could take vacations or sick time as he chose." *Id.* at *17. Based on these facts, the court held that the defendant "did not control the manner in which the plaintiff performed his work," which indicated that the plaintiff was an independent contractor. *Id.*

Here, Defendant Golla testified in his deposition that he expected Plaintiff Green to work full time for Defendant GC, *id.* at p. 38, ¶ 12; ECF No. 29-2, at 9, and, according to the term sheet, Plaintiff Green was expected to communicate to Defendants "the areas worked daily in an excel like format," (ECF No. 32, at p. 3, ¶ 6). Also, according to the term sheet, Plaintiff was expected to meet weekly with Defendant Golla so that he could help direct her progress. *Id.* Furthermore, although Defendant Golla did not require that Plaintiff Green agree to work exclusively for Defendant GC, (ECF No. 32, at pp. 19–20, ¶ 35), he testified in his deposition that he would have found it unacceptable if Plaintiff Green engaged in other employment that interfered with her work for Defendant GC or that was for a competitor, (ECF No. 29-2, at 9–10). On the other hand, Defendant GC did not establish a rigid work schedule for Plaintiff Green and did not require her to report the hours she worked. (ECF No. 32, at p. 7, ¶ 16). Plaintiff Green was also free to take vacation time when she chose, and did not have to get time off pre-approved by Defendant Golla. *Id.* at p. 10, ¶ 19. Additionally, Plaintiff Green testified that Defendant Golla's goals and directions were vague, *id.* at p. 17, ¶ 33, and she accordingly generated her own work plan based on independent research and her prior sales experience, *id.* at pp. 16–19, ¶ 33. Furthermore, Plaintiff Green ran marketing events at her own expense. *Id.* at p. 16, ¶ 31. These facts indicate that although Defendants had some control over the manner in which Plaintiff Green performed her work, that control was minimal. Therefore, this factor tips toward independent contractor status, rather than the existence of an employee-employer relationship.

*b. Alleged employee's opportunity for profit or loss.* Next, to determine "the alleged employee's opportunity for profit or loss depending upon his managerial skill," courts have primarily considered whether the plaintiff's compensation was tied to performance. *See Donovan*, 757 F.2d at 1386 (finding the fact that the plaintiffs "risked financial loss if they did not manage their [work] properly" weighed in favor of independent contractor status); *Li v. Renewable Energy Solutions, Inc.*, 2012 U.S. Dist. LEXIS 22312, at *20 (D.N.J. Feb. 21, 2012) (explaining that "this factor may be present for a worker whose earnings are tied to his performance"); *Luxama*, 2012 U.S. Dist. LEXIS 99292, at *14 (noting that a worker who receives a regular salary in a set amount or a fixed commission may be considered an employee, but a worker who is paid by the project may be considered an independent contractor).

In the present case, Defendant GC initially paid Plaintiff Green a base salary in a set amount, plus a discretionary bonus. (ECF No. 32, at pp. 2–3, ¶¶ 5–6). Although the base salary was not tied to Plaintiff Green's performance, the fact that the amount of the bonus was determined at Defendant Golla's discretion indicates that perhaps Plaintiff Green's total compensation prior to June 2017 was, in some manner, tied to her performance. However, the parties renegotiated the terms of compensation in June 2017, at which time they dispensed with the base salary and bonus and instead agreed that Plaintiff Green would receive a fixed commission of two percent of Defendant GC's gross revenues. *Id.* at pp. 5–6, ¶¶ 8, 10–12; p. 42, ¶¶ 17–18. Defendant Golla testified that there are many factors that affect revenue, but that he believed Plaintiff Green, whose sole purpose was to increase revenues, had an impact on revenue. (ECF No. 29-2, at 19–22). He further testified that the revenues on which Plaintiff Green's commission was based included areas where Plaintiff Green had not worked. *Id.* at 24. In light of the fact that Defendant GC paid Plaintiff Green two percent of gross revenues regardless of whether she performed her job duties, and, to a certain extent, regardless of whether

11

she worked in certain areas that produced said revenue, as well as the fact that there were many factors unrelated to Plaintiff Green's performance that affected revenue, it would seem that Plaintiff Green's compensation was unrelated to her performance. On the other hand, Plaintiff Green's sole purpose in her role as Director of Business Development was to increase Defendant GC's revenue, which indicates that, despite the foregoing facts, her compensation was perhaps at least loosely related to her performance. However, Defendants allege that in July 2017, Defendant Golla communicated to Plaintiff Green his intention to change how Plaintiff Green would be compensated, so that her compensation would be based on growth in revenue, and thus tied more directly to her performance. *Id.* at pp. 44–45, ¶ 25; *see also* ECF No. 25-3, at ¶14. If Defendants' assertion is supported by the evidence, it is more likely that Plaintiff Green was an independent contractor in the months for which she did not receive compensation. Nevertheless, the Court does not need to come to a conclusion on this point because, as discussed in greater detail below regarding Plaintiff Green's breach of contract claim, the facts surrounding the alleged change in compensation are in dispute. Therefore, this factor—which is but one factor in a non-exhaustive factor-balancing test, and thus is not necessarily outcome determinative— cannot be fully assessed at this time.

*c. Investment in equipment or materials and employment of helpers.* Regarding the third factor, "the alleged employee's investment in equipment or materials required for his task, or his employment of helpers," courts have considered what the alleged employer and employee each provided to enable the alleged employee to perform his work. For example, in *Safarian*, the Third Circuit noted that the alleged employer provided business cards, an email address, clothing, a cell phone, a computer, and a beeper, which, the court stated, "may suggest Safarian was an employee rather than an independent contractor." *Safarian*, 729 Fed. App'x at 174. However, the alleged employee, an engineer, supplied his own truck and many of his own tools. *Id.* at 173.

Noting these facts, the court ultimately concluded that the plaintiff was an independent contractor. *Id.* at 173–74. Similarly, in *Sofranko*, the court found that the plaintiff, a sales representative, "was financially responsible for the materials required for his work," pointing out that the plaintiff paid all of his own business expenses, continuing education, and related instructional materials. *Sofranko*, 2007 U.S. Dist. LEXIS 99666, at *18. The court also noted that the alleged employer "did not provide the plaintiff with office supplies, equipment, or office space," and that "the plaintiff deducted all of his expenses associated with [his work] on a Schedule C (Profit and Loss from Business), not on a Schedule A (Itemized Deductions)," tax form. *Id.* The court ultimately concluded that the plaintiff was an independent contractor. *Id.* at *23.

Here, Defendants provided Plaintiff Green with an email address, (ECF No. 32, at p. 42, ¶ 16), but Defendants did not provide Plaintiff Green with an office, cell phone, computer, or vehicle, *id.* at p. 15, ¶¶ 27–29. Instead, Plaintiff Green worked from home and used her own phone, computer, and car. *Id.* She also paid for all of her business expenses and marketing events, *id.* at p. 16, ¶¶ 30–31, and she claimed such expenses on a Schedule C tax form. *Id.* at p. 22, ¶ 39. Therefore, much like in *Sofranko*, this factor suggests that Plaintiff Green was an independent contractor.

*d. Whether service requires special skill.* As to the fourth factor, "whether the service rendered requires a special skill," using specialized skills, rather than engaging in routine work, makes it more likely that a FLSA plaintiff is an independent contractor. *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1295 (3d Cir. 1991). However, "the use of special skills is not itself indicative of independent contractor status, especially if the workers do not use those skills in any independent way." *Id.*

13

Defendant Golla testified at his deposition that he hired Plaintiff Green for the position of Director of Business Development because he needed someone who was better suited for and skilled at sales and relationship building than he and his clinicians. (ECF No. 29-2, at 14–15). This point is underscored by Plaintiff Green's deposition testimony that although Defendant Golla had goals for his business, such goals were vague, and Plaintiff Green was to use her skills, experience, and judgment to fill in the gaps. (ECF No. 32, at pp. 17–19, ¶ 33). As discussed above in regard to Defendants' control over Plaintiff Green's work, Plaintiff Green exercised considerable autonomy from the outset of her relationship with Defendants, and she used her skills in an independent way. Therefore, this factor indicates that Plaintiff Green was an independent contractor.

*e. Degree of permanence.* Next, "the degree of permanence of the working relationship" generally relates to whether the relationship is continuous and of an indefinite duration or whether it consists of fixed periods. *Razak v. Uber Techs., Inc.*, 2018 U.S. Dist. LEXIS 61230, at *51 (E.D. Pa. Apr. 11, 2018). "Generally, independent contractors have variable or impermanent working relationships with the principal company because they 'often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas "employees" usually work for only one employer and such relationship is continuous and indefinite in duration.'" *Id.* (quoting *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1442 (10th Cir.1998)).

Here, Plaintiff Green was not hired for a fixed term or to complete a particular project. Instead, she was hired for the general purpose of increasing Defendant GC's revenues. (ECF No. 32, at p. 2, ¶ 4). Additionally, Defendant Golla stated that he expected Plaintiff Green to work for him full time, and that he would find it unacceptable if Plaintiff Green performed the same work for a competitor as she did for Defendants. (ECF No. 32, at pp. 19–20, ¶ 35; ECF No. 32,

14

at p. 38, ¶ 12; ECF No. 29-2, at 9). Thus, Plaintiff Green's relationship with Defendants was of a "continuous and indefinite" duration, rather than a fixed employment period with an ability to "transfer from place to place." It appears then that the parties' relationship had a degree of permanence associated with an employee-employer relationship.

*f. Integral part of the alleged employer's business.* Lastly, according the Third Circuit, "whether the service rendered is an integral part of the alleged employer's business" relates "to the nature of the work performed by" the plaintiff. *Donovan*, 757 F.2d at 1385. If the plaintiff's work "constitute[s] an 'essential part' of the alleged employer's business," or if the plaintiff "perform[s] the primary work of the alleged employer," then the plaintiff is more likely to be an employee. *Id.* On the other hand, if the plaintiff's work is incidental to the defendant's business, the plaintiff is an independent contractor. *Id.* at 1387. For example, in *Donovan*, the defendant was in the business "of locating telephone numbers for various people and calling them to sell particular products," while the role of one group of plaintiffs was to distribute telephone-number search cards to the defendant's home researchers. *Id.* The court held that, under this factor, the distributor-plaintiffs were not employees because their work was "more properly characterized as an incident to defendant's business, rather than an integral part of it." *Id.*

Here, it is undisputed that Defendant GC is a plastic surgery and comprehensive wound care practice, and that Defendant Golla is a board-certified plastic surgeon. (ECF No. 32, at p. 1, ¶¶ 1–2). Plaintiff Green was hired to focus on growing Defendant GC's revenues by developing relationships with referring facilities and physicians. *Id.* at p. 2, ¶ 4. She was not hired as a part of the medical staff, nor did she in any way participate in providing plastic surgery or wound care services to patients. As in *Donovan*, Plaintiff Green's role is more properly characterized as incidental to the primary work of Defendants. Thus, under this factor, Plaintiff Green is more likely an independent contractor, and not an employee, of Defendant GC.

In conclusion, one factor, regarding the degree of permanence, points toward an employee-employer relationship, and another factor, regarding the alleged employee's opportunity for profit or loss, cannot be determined based on the undisputed facts. However, each of the four remaining factors indicates independent contractor status. Even if the unresolved factor were decided in favor of Plaintiff Green having been an employee of Defendant GC, such a determination would not significantly sway "the circumstances of the whole activity" when considering the other, undisputed facts in this case—in other words, the disputed facts are not material to this claim. This Court thus concludes as a matter of law that, in light of the economic realities of the parties' relationship, Plaintiff Green was an independent contractor of Defendant GC. Therefore, FLSA does not apply to Plaintiff Green, and Defendant GC is entitled to summary judgment as to Count V of the Complaint.

*2. WPCL claims*

Plaintiff Green also alleges, in Counts I and II of the Complaint, that Defendants GC and Golla, respectively, violated Pennsylvania's WPCL by failing to compensate Plaintiff Green. (ECF No. 1-2, at 15–16). Like FLSA, the WPCL applies only to the employee-employer relationship. *Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314, 320 (3d Cir. 2016). Having determined that Plaintiff Green was an independent contractor, and not an employee, of Defendant GC, the WPCL does not apply to Plaintiff Green. Therefore, Defendants GC and Golla are entitled to summary judgment as to Counts I and II.

*3. Breach of contract claim*

In Count III of her Complaint, Plaintiff Green alleges that she and Defendant GC were parties to an enforceable contract, under which Defendant GC agreed to pay Plaintiff Green a commission based on two percent of Defendant GC's gross revenue (except for revenue from

16

two specific services offered by Defendant GC). (ECF No. 1-2, at 16–17). Plaintiff Green alleges that Defendant GC breached the contract by failing to pay her in August and September 2017. *Id.* at 17. Defendant GC contends it is entitled to summary judgment on Count III because Plaintiff Green is not owed compensation for those months under the new terms allegedly communicated to Plaintiff Green in July 2017. (ECF No. 30, at 7–8). Plaintiff Green argues that she is entitled to summary judgment because the agreement to pay her two percent of gross revenue was still in effect, and Defendants have admitted that Plaintiff Green did not get paid anything in August and September. (ECF No. 23, at 10–12).

To have an enforceable contract, (1) the parties must have "manifested an intention to be bound by the agreement," (2) "the terms of the agreement [must be] sufficiently definite," and (3) there must be consideration. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). In the employment context, an employer may unilaterally institute prospective changes in an employee's compensation. *Divenuta v. Bilcare, Inc.*, 2011 U.S. Dist. LEXIS 34279, at *9–10 (E.D. Pa. Mar. 31, 2011) ("[The] power to terminate the employment relationship 'at will' carries with it the power to dictate prospective changes in the terms of employment, including an employee's compensation."). The employee accepts the new compensation by continuing to work, and is welcome to reject the new compensation by terminating her employment. *See Lipson v. Jackson Nat'l Life Ins. Co.*, 2004 U.S. Dist. LEXIS 1169, at *17 n.7 (E.D. Pa. Jan. 7, 2004) (quoting *Gehin-Scott v. Newson, Inc.*, 848 F. Supp. 585, 589 (E.D. Pa. 1994) ("'[I]f an employee is dissatisfied with the terms offered by the employer, the employee is free to resign.'"). It stands to reason, then, that if an employee is not notified of the prospective change in compensation, the employee has not been given the opportunity to accept or reject the new contract term. Consequently, an employer's failure to notify renders the new compensation term unenforceable.

Here, Defendants argue that in July 2017, the terms of Plaintiff Green's compensation changed to a percentage of the growth in revenue, and that because there was no growth in revenue in July and August 2017, Defendant GC did not owe Plaintiff Green any compensation in August and September 2017. (ECF No. 26, at 6). Plaintiff Green argues that Defendant Golla did not communicate the alleged change to her, and that, in the alternative, even if he did notify her, she did not agree to the proposed change. (ECF No. 22, at ¶¶ 7–10). Although Defendant Golla could certainly change the method by which Plaintiff Green would be compensated, he was required to notify Plaintiff Green of the prospective change. If Defendant Golla did notify Plaintiff Green—as he testified in his deposition that he did, (ECF No. 25-2, at 18–19)—then Plaintiff Green would be bound by the new compensation term because she continued to work for Defendant GC. Plaintiff Green, on the other hand, adamantly denies that she received such notification, and points out that she continued to send Defendants requests for payment based on the two percent commission. (ECF No. 32, at pp. 44–45, ¶¶ 25–26). There are no documents or other evidence in the record that resolve this issue. Thus, there is a genuine dispute of material fact regarding whether Defendants notified Plaintiff Green of the prospective change in her compensation. Accordingly, summary judgment is inappropriate here, and both Plaintiff Green's and Defendants' Motions for Summary Judgment will be denied as to Count III.

*4. Unjust enrichment claim*

Lastly, in Count IV of the Complaint, Plaintiff Green alleges that Defendant GC has been unjustly enriched because it "accepted the services of Plaintiff and received the benefit thereof" but "has refused and continues to refuse to pay the fair market value for such services to Plaintiff." (ECF No. 1-2, at 17–18). Only Defendant GC moves for summary judgment on this claim. (ECF Nos. 19, 22). Defendant GC argues that there is no claim for unjust enrichment

where there is an enforceable contract. (ECF No. 21, at 23). Unjust enrichment, an equitable, quasi-contractual doctrine, is "'inapplicable when the relationship between the parties is founded on a written agreement or express contract.'" *Cook v. General Nutrition Corp.*, 2018 U.S. App. LEXIS 26258, at *4 (3d Cir. Sept. 17, 2018) (quoting *Benefit Tr. Life Ins. Co. v. Union Nat. Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985)). The undisputed facts here show that the parties had an express, written employment contract, which they orally modified only as to the manner of compensation. (ECF No. 32, at p. 2, ¶ 5; p. 30, ¶ 5). Therefore, unjust enrichment is not applicable. Defendant GC is thus entitled to summary judgment as to Count IV.

**III. Conclusion**

THEREFORE, Defendants' Motion for Summary Judgment is GRANTED as to Counts I, II, IV, and V, and it is DENIED as to Count III. Plaintiff Green's Partial Motion for Summary Judgment is DENIED.

DATE March 7, 2019

Marilyn J. Horan
United States District Judge